UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE


Brett Beede

    v.                                              Civil No. 16-cv-010-JL
                                                    Opinion No. 2017 DNH 005
Carolyn Colvin,
Acting Commissioner,
Social Security Administration


**ORDER ON APPEAL**

Brett Beede has appealed the Social Security Administration's ("SSA") denial of his application for a period of disability, disability insurance benefits, and supplemental security income. An administrative law judge at the SSA ("ALJ") ruled that, despite the severe impairment of degenerative disc disease of the spine post laminectomy and discectomy, Beede retains the residual functional capacity ("RFC") to perform jobs that exist in significant numbers in the national economy, and thus is not disabled. See 20 C.F.R. §§ 404.1505(a), 416.905(a). The Appeals Council later denied Beede's request for review, see id. § 404.967, with the result that the ALJ's decision became the final decision on Beede's application, see id. § 404.981. Beede then appealed the decision to this court, which has jurisdiction under 42 U.S.C. § 405(g) (Social Security).

Beede has moved to reverse the decision, see L.R. 9.1(b), contending that the ALJ's findings as to Beede's RFC, made at

step three, are not supported by substantial evidence, and that the ALJ erroneously relied on flawed vocational testimony at step five of the process.  The Acting Commissioner of the SSA has cross-moved for an order affirming the ALJ's decision.  See L.R. 9.1(e).  After careful consideration, the court grants Beede's motion to reverse (and denies the Acting Commissioner's motion to affirm) the ALJ's decision.

## I. Background[1]

The ALJ invoked the requisite five-step process in assessing Beede's request for disability and disability insurance benefits.  See 20 C.F.R. § 416.920.  First, he concluded that Beede had not engaged in substantial gainful activity during the period between the alleged onset of his disability on December 16, 2006, and the date to which he would remain insured, December 1, 2010.  The ALJ then concluded that Beede suffered from a single severe impairment:  "degenerative disc disease of the spine status post laminectomy and discectomy

---

[1] The court recounts here only those facts relevant to the instant appeal.  The parties' more complete recitation in their Joint Statement of Material Facts (document no. 12) is incorporated by reference.  See L.R. 9.1(d).

at L4-5".[1]  Beede's hepatitis C, alcohol abuse, and depression, the ALJ determined, did not amount to severe impairments.[2]

At the third step, the ALJ found that Beede's severe degenerative disc disease did not meet or "medically equal" the severity of one of the impairments listed in the Social Security regulations, despite the examining physician's opinion that it did so.  See 20 C.F.R. §§ 416.920(d), 416.925, and 416.926.  After reviewing the medical evidence of record, Beede's own statements, the assessment of an examining orthopedist, the examination report of an impartial medical consultant, and the findings of a non-examining State agency medical consultant, the ALJ concluded that Beede retained the RFC to perform light work, albeit with several physical limitations.[3]  Though these limitations prevented Beede from performing his past relevant work as a cabinet builder, landscaper, and construction supervisor, see 20 C.F.R. § 416.965, the ALJ found at step five that Beede could perform jobs that exist in significant numbers

---

[1] Admin. R. at 13.

[2] Id. at 14-16.

[3] Id. at 17-20.  The ALJ considered, but gave no weight to, an opinion provided by someone whose credentials to render that opinion were not apparent and who, thus, was not considered an acceptable medical source under the regulations.  Id. at 20.  Beede does not challenge this aspect of the ALJ's decision.

in the economy.  Therefore, the ALJ found, Beede was not disabled within the meaning of the Social Security Act.

## II.  Analysis

Beede challenges two aspects of the ALJ's analysis.  He contends that the ALJ engaged in a flawed RFC analysis, leading to an equally flawed RFC finding, and that, at step five, the ALJ relied on flawed vocational testimony to conclude that Beede could work at jobs that exist in significant numbers in the national economy despite his physical limitations.  The ALJ did not err as to the first; his RFC analysis and the RFC are supported by substantial evidence.  His failure to reconcile inconsistencies between the vocational expert testimony elicited at the hearing and the Dictionary of Occupational Titles at step five of the analysis, however, mandates remand.

### A.  RFC analysis

The ALJ's residual functional capacity assessment must be supported by substantial evidence in the record.  See Berrios Lopez v. Sec'y of Health & Human Servs., 951 F.2d 427, 431.  Substantial evidence is that which a "reasonable mind, reviewing the evidence in the record as a whole, could accept . . . as adequate to support [the] conclusion." Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (quoting

4

Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).

The ALJ concluded that Beede had the RFC to perform light work, as defined by 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the following exceptions:

> [he] can occasionally lift up to 20 lbs. but can frequently lift up to 20 lbs. as well.  He can stand and walk up to 1-hour per workday.  He is unlimited with respect to sitting but requires the ability to alternate position periodically as needed 30 minutes at a time.  This means [he] requires an essentially seated job, involving up to about 1-hour of standing and walking throughout the workday, with the ability to sit for 30 minutes at a time before he requires the ability to get up for a minute and stretch.  [He] can only occasionally engage in pushing and pulling activities.  He cannot climb ladders, ropes or scaffolds but can frequently balance, kneel, crouch, stoop and climb stairs.  [He] can occasionally crawl.  [He] has no difficulties with respect to performing manipulative activities, and has no difficulties with respect to communication or visual activities.[4]

Beede contends that this RFC is not supported by substantial evidence on two fronts.  Specifically, Beede notes that an RFC that allows him to stand and walk up to only one hour per day necessarily implies that Beede must sit the remainder of the time.  Beede argues that substantial evidence in the record does not support a conclusion that Beede is capable of sitting for seven hours in the workday -- an implication of an RFC that

---

[4] Admin. R. at 16-18.

limits him to standing and walking less than one hour.[5]  Beede also contends that the ALJ improperly discounted the opinion of one of his medical examiners as to Beede's ability to maintain attention and focus during the workday.

In crafting Beede's RFC, the ALJ considered, among other evidence, the opinions of two medical examiners -- Dr. Frank A. Graf and Dr. Peter C. Loeser -- as well as one non-examining State agency medical consultant, Dr. Burton Nault.  Dr. Graf concluded that Beede could stand and/or walk "less than 2 hours in an 8-hour workday,"[6] which the ALJ considered in determining that Beede could stand and/or walk up to one hour per workday.[7] Though concluding that Beede's impairment affected his ability to sit, Dr. Graf indicated no time limitation; he indicated, instead, that Beede "must periodically alternate sitting and standing to relieve pain or discomfort."[8]  The ALJ took this limitation, as well as Beede's testimony and the ALJ's own observations of Beede, into account in requiring that Beede have

---

[5] Mot. to Reverse (doc. no. 7) at 4-5.

[6] Admin. R. at 463.

[7] Id. at 20.

[8] Id. at 464.

the opportunity "to alternate position periodically as needed 30 minutes at a time."[9]

Both Dr. Nault and Dr. Loesser more favorably evaluated Beede's ability to sit and stand for a long duration. Dr. Nault concluded that Beede could stand and/or walk "about 6 hours per day," and could "sit (with normal breaks)" for the same amount of time.[10] Dr. Loeser concluded that the effect of Beede's impairment on his functional capacity would "be no more than mild,"[11] though the ALJ afforded this opinion little weight because it was inconsistent with the opinions of Drs. Nault and Graf, and because Dr. Loeser did not indicate how Beede's impairment "would restrict him in the performance of specific job tasks."[12]

The ALJ crafted an RFC that took into account the opinions of all three medical experts. His conclusion as to Beede's ability to sit, and Beede's need to alternate positions, accords with Dr. Graf's conclusions. Accordingly, the ALJ's determination as to Beede's ability to sit or stand is supported by substantial evidence in the record. The court will not

---

[9] Id. at 20.

[10] Id. at 92.

[11] Id. at 405.

[12] Id. at 19.

disturb an RFC so supported, even if "the record arguably could support a different conclusion." Ortiz, 955 F.2d at 770.

Beede also argues that the ALJ erred in concluding that he retained the function to perform "light work" when the RFC only permits Beede to stand and/or walk for less than one hour per day. This should, Beede contends, be considered "sedentary work."[13] "[A] sedentary job is defined as one which involves sitting," though it may require "a certain amount of walking and standing . . . in carrying out job duties." 20 C.F.R. § 404.1567(b). A job is categorized as light work, on the other hand, when it "requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." Id. § 404.1567(c). The ability to perform light work incorporates the ability to perform sedentary work, absent considerations not present here. Id. ("If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.").

The ALJ concluded, and Beede does not contest, that Beede can occasionally and frequently lift up to 20 pounds.[14] He then

---

[13] Mot. to Reverse (doc. no. 7) at 8-10.

[14] Admin. R. at 16.

concluded that Beede could not perform the full range of light work, and imposed additional limitations to account for Beede's need to alternate positions, as described by Dr. Graf. Though there is some apparent inconsistency between the definition of "light work" and an ability to stand for only one hour per day, the ALJ's significant limitations on Beede's RFC mitigate any such inconsistencies and appear consistent with the evidence of record.

Finally, Beede contends that the ALJ erred in his treatment of Dr. Graf's opinion as to Beede's inability to maintain attention and concentration on work tasks throughout an eight-hour workday. In response to the question of whether it is "medically reasonable to expect that [Beede's] ability to maintain attention and concentration on work tasks throughout an 8 hour day is significantly compromised by pain, prescribed medication or both," Dr. Graf opined that Beede's attention and concentration would be "limited by pain and psychiatric [diagnoses]."[15] Beede argues that the ALJ "erred in simply ignoring Dr. Graf's opinion" on this score.[16]

First, the ALJ did not err by discounting Dr. Graf's opinion as to the effect of depression on Beede's ability to

---

[15] Admin. R. at 465.

[16] Mot. to Reverse (doc. no. 7) at 5-7.

maintain attention and concentration. The ALJ discounted Dr. Graf's opinion on this score on the permissible ground that Dr. Graf is an orthopedic surgeon, not a mental health practitioner. See 20 C.F.R. 404.1527(c)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."). The ALJ further relied on other evidence in the record in making this determination, including Beede's lack of mental health treatment and statements by Beede and his attorney.[17] Beede has not demonstrated that this conclusion lacks substantial support in the record. Cf. Ortiz v. Sec'y of Health & Human Servs., 955 F.2d at 769-70.

Nor did the ALJ err in discounting Dr. Graf's opinion that Beede's ability to maintain attention and concentration was "limited by pain."[18] The ALJ did not, as Beede argues, ignore that opinion; rather, the ALJ discounted it as contradicted by Beede's own representations as to his ability to concentrate and pay attention.[19] Specifically, Beede himself indicated that he could pay attention "[a]ll day mostly," that he finishes what he

---

[17] Admin. R. at 14.

[18] Id. at 465.

[19] Id. at 14. See also id. at 17 (discussing Beede's ability to complete tasks and pay attention).

starts and that he follows written and spoken instructions "well."[20]

The ALJ is, as Beede points out, obligated to consider all evidence, see 20 C.F.R. § 404.1527(a)(3), including medical opinion evidence, see id. § 404.1527(b), in determining whether a claimant is disabled. The ALJ fulfilled this obligation by considering Dr. Graf's opinion, and explaining why, in light of other evidence in the record, including Dr. Graf's specialty and Beede's own representations, he discounted it.

### B. Vocational expert testimony

Though the ALJ's RFC analysis passes muster, his conclusion at step five of the analysis that Beede could perform jobs that exist in significant numbers in the national economy does not. In coming to that conclusion, the ALJ heard testimony from a vocational expert as to whether such jobs exist for an individual with Beede's age, education, work experience, and RFC. The vocational expert testified that three jobs met those requirements: price marker, furniture rental consultant, and laundry classifier.[21] Each of these jobs is categorized as requiring a "light work" level of exertion. The vocational expert testified that "the Dictionary of Occupational Titles

---

[20] Id. at 177.

[21] Id. at 22.

does not categorize the sit/stand option" that the ALJ included in Beede's RFC, but that "[t]he jobs provided today as examples do provide a sit/stand option for the individual as in the hypothetical."[22] She drew this conclusion from her "experience in working with employers, human resource representatives, corporation[s], when writing job analyses, when observing individuals in the work place, also asking questions for research and labor market surveys."[23]

The ALJ acknowledged that "the vocational expert's testimony is inconsistent with the information contained in the Dictionary of Occupational Titles . . . ."[24] In those circumstances, the ALJ "must elicit a reasonable explanation for the conflict before relying on the [vocational expert's] evidence to support a determination or decision about whether the claimant is disabled." Social Security Ruling ("SSR") 00-04p, Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions, 2000 WL 1898704, at *2 (S.S.A.2000). Though "[n]either the DOT nor the VE or VS evidence automatically 'trumps' when there is a conflict," it is

---

[22] Id. at 67.

[23] Id.

[24] Id. at 22.

incumbent on the ALJ to "resolve the conflict by determining if the explanation given by the [vocational expert] is reasonable and provides a basis for relying on the [vocational expert] testimony rather than on the DOT information."  Id.  The ALJ did not do so here.

The ALJ's reconciliation of the conflict between the vocational expert's testimony and the Dictionary of Occupational Titles was limited to eliciting an affirmative response to the following question:  "Now, these are all light jobs as well.  And we're looking at primarily a seated-type position.  And these jobs would tolerate that mix of sitting and standing?"[25]  Though the vocational expert outlined her experience, she offered no explanation for how or why (1) jobs listed as "light work" would be "primarily a seated-type position," or (2) these jobs in particular "would tolerate [the] mix of sitting and standing" described in the RFC.  Absent such evidence, the ALJ has not satisfied his obligation to "elicit a reasonable explanation for the conflict before relying on the [vocational expert] evidence to support" his determination that Beede was disabled.  SSR 00-04p, 2000 WL 1898704, at *2; Colby v. Barnhart, 2004 DNH 110, 16 ("If there is a conflict between VE testimony and the DOT classifications for jobs, the ALJ must ask

---

[25] Id. at 67.

13

the VE to explain the conflict and state how it was resolved on the record.").

The Acting Commissioner contends that Beede has not carried his burden of demonstrating that this error is prejudicial because "nothing in the DOT suggests that the remaining two jobs that the VE identified (i.e., price marker and laundry classifier) are inconsistent with the RFC finding."[26] But that is not the calculus. The ALJ acknowledged an inconsistency between the vocational expert's testimony and the Dictionary of Occupational Titles as to all three jobs.[27] Before concluding that these jobs are consistent with the RFC, the ALJ needed to have reconciled that inconsistency. He relied upon the vocational expert's testimony -- that such jobs, despite requiring the ability to perform "light work," could be performed by someone requiring the ability to alternate between sitting and standing -- without performing that reconciliation. In doing so, the ALJ erred.

### III. Conclusion[28]

Though substantial evidence in the record supports the ALJ's RFC determination, because the ALJ did not resolve

---

[26] Mem. in Supp. of Mot. to Affirm (doc. no. 11-1) at 12.

[27] Admin. R. at 22.

[28] The Acting Commissioner has moved to strike Beede's reply memorandum on grounds that it merely reiterates (at times,

14

inconsistencies between the vocational expert's testimony and the Dictionary of Occupational Titles, Beede's motion to reverse the SSA's decision[29] is GRANTED and the Acting Commissioner's motion to affirm[30] is DENIED.  This matter is remanded to the Acting Commissioner for further proceedings, pursuant to sentence four of 42 U.S.C. § 405(g).  The clerk shall enter judgment accordingly and close the case.

    **SO ORDERED.**

*/s/ Joseph N. Laplante*
Joseph N. Laplante
United States District Judge

Dated:  January 31, 2017

cc:  Francis M. Jackson, Esq.
     Penelope E. Gronbeck, Esq.
     Robert J. Rabuck, AUSA

---

verbatim) the claimant's initial arguments in violation of Local Rule 7.1(e)(1).  See Mot. to Strike (doc. no. 14).  Reply memoranda are "restricted to rebuttal of factual and legal arguments raised in the objection or opposition memorandum." L.R. 7.1(e)(1).  To the extent the claimant's reply memorandum is merely repetitive of his motion to reverse, the court has disregarded those portions.  This does not alter the court's conclusion, however.

[29] Document no. 7.

[30] Document no. 11.